```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/27/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT DEREK LURCH JR.,

                      Plaintiff,

-against-

THE CITY OF NEW YORK, NYCHHC, MD
FRANCE CHAPUT, RN MARIA MARQUEZ,
NYPD OFFICERS (4),

                      Defendants.

16 Civ. 2517 (AT) (JCF)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff *pro se*, Robert Derek Lurch Jr., brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his federal rights stemming from an involuntary hospitalization and administration of antipsychotic drugs at Bellevue Hospital in Manhattan. Defendants New York City Health and Hospitals Corporation, France Chaput, M.D., and Maria Marquez, R.N. ("Moving Defendants") move to dismiss Plaintiff's third amended complaint (the "complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, Moving Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

    On December 26, 2013, police were called to a restaurant in Manhattan, where Plaintiff, Robert Derek Lurch Jr., was involved in a dispute with a cashier. Compl. 6, ECF No. 57.[2] Lurch claimed that he had been shortchanged. *Id.* After police officers interviewed Lurch and the restaurant staff, the officers asked Lurch to leave. *Id.* at 7. When Lurch refused, he was arrested. *Id.*

---

[1] Defendant the City of New York has not filed a motion to dismiss, choosing to answer instead. *See* ECF. No. 58.
[2] When citing Plaintiff's handwritten submissions, the Court relies on the ECF-generated page numbers in the top margin.

The arresting officer escorted Lurch in an ambulance to Bellevue Hospital. *Id.* The officer explained to the attending physician, Defendant France Chaput, M.D., that the officer brought Lurch to Bellevue because "he didn't pay for his food at a Chinese restaurant and was breaking things." *Id.* Lurch told Chaput that the officer was lying and disputed his version of the events. *Id.* at 8. At the hospital, Lurch repeatedly complained that his handcuffs were too tight and asked the officer to loosen them. *Id.* at 7-8. When the officer refused, Lurch became agitated. *Id.* He called the officer an expletive and told him that he was abusing his authority. *Id.* The officer then cuffed Lurch to a chair and told Chaput to administer a drug "to calm [Lurch] down." *Id.* at 9. Lurch then told Chaput, "I didn't do anything, I want to go home, and I don't want any medication." *Id.*

Lurch informed Chaput and other medical personnel that he was allergic to the antipsychotic drug Haldol and that the last time it was administered to him, he "almost died." *Id.* at 10. Chaput then ordered a nurse to restrain Lurch with ankle and wrist restraints and prepared to medicate Lurch. *Id.* Lurch "started twisting left and right in a futile attempt to free [him]self" and began crying. *Id.* After being injected with Haldol, Lurch fell asleep and awoke the following day. Lurch does not claim that he suffered any physical injury from the Haldol. *See id.*

## DISCUSSION

### I. Motion to Dismiss Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003)). "Only a complaint that

2

states a plausible claim for relief survives a motion to dismiss." *Id.* at 476; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208 (2d Cir. 2014) (per curiam) (quoting *Iqbal*, 556 U.S. at 678). *Pro se* litigants are entitled to "special solicitude," and the court will construe a *pro se* "complaint to raise the strongest claims that it suggests." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Nonetheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

II.   <u>Municipal Liability</u>

Lurch sues the New York City Health and Hospitals Corporation, a city entity, for the allegedly unconstitutional actions of its employees. However, a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, "it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* A *Monell* claim thus requires a plaintiff to plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Absent an explicit policy or custom, it is sufficient that a "practice of municipal officials was so 'persistent or widespread' as to

'constitute a custom or usage with the force of law.'" *Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004) (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Similarly, a plaintiff can establish *Monell* liability if the unconstitutional conduct is so "pervasive" such that "the supervising policymaker's failure to take [corrective] action gives rise to an inference of her deliberate indifference." *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 431 (S.D.N.Y. 2012) (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)).

Plaintiff does not allege that Moving Defendants were operating under an explicit policy to violate the constitutional rights of hospitalized patients. Rather, Plaintiff appears to plead municipal liability on the theory that the government failed to act to prevent the violation of his constitutional rights, and that such failure "was so persistent or widespread as to constitute a custom or usage with the force of law." *Patterson*, 375 F.3d at 226.

However, the complaint's deliberate indifference allegations fail in this regard. Plaintiff asserts that the hospital's "facilities should be under intense supervision by their employers" and that "any standard requiring less to satisfy a decision involving a citizen's constitutional rights shows that [the hospital] is showing a deliberate indifference to the rights of the citizens in their care." Compl. 51. These allegations amount to "naked assertion[s] devoid of further factual enhancement," and therefore do not contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under *Monell*, a plaintiff must plead facts that plausibly suggest deliberate indifference. Yet Lurch fails to cite any other examples of misconduct other than the single allegation in his own case, which falls well short of showing that unconstitutional conduct was so "pervasive" such that failure to take corrective action

4

constitutes "deliberate indifference." *See Vann*, 72 F.3d at 1049. In addition, because deliberate indifference *Monell* liability cannot be established by one instance of alleged unconstitutional conduct, Plaintiff fails to state a claim for municipal liability. *See Decarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (holding that a single incident alleged in a complaint does not suffice to state a claim under *Monell*); *see also Connick v. Thompson*, 563 U.S. 51, 54 (2011) (holding that a *Monell* deliberate indifference claim against a district attorney's office could not be established by a single *Brady* violation).

A *pro se* litigant should be afforded "at least one chance" to amend his complaint prior to its dismissal for failure to state a claim. *Carvel v. New York*, No. 08 Civ. 3305, 2010 WL 1404154, at *4 (S.D.N.Y. Apr. 6, 2010) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1990) (per curiam)). Because Plaintiff has already been given an opportunity to amend his complaint to allege a policy or practice consistent with *Monell*, *see* Order to Amend at 3-4, ECF No. 6, Moving Defendants' motion to dismiss this claim is GRANTED, and the municipal liability claim is dismissed with prejudice.

III. Fourteenth Amendment Claims

A. Substantive Due Process

Plaintiff alleges various violations of his substantive Fourteenth Amendment rights, including involuntary commitment, forced administration of medicine, and improper use of restraints. *See* Compl. 12-29; Pl. Mem. 3-6, 15-23, ECF No. 71. For these claims, the pleaded facts are sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

To determine whether a person's liberty has been violated under the Due Process Clause of the Fourteenth Amendment, "it is necessary to balance 'the liberty of the individual'

and 'the demands of an organized society.'" *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982) (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961) (Harlan, J., dissenting)). An "involuntary civil commitment is a massive curtailment of liberty." *Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 188 (2d Cir. 2005) (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995)). Due process also protects against "unwanted medical treatment." *Pabon v. Wright*, 459 F.3d 241, 249 (2d Cir. 2006) (quoting *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990)). Therefore, "due process does not permit the involuntary hospitalization of a person who is not a danger either to herself or to others." *Olivier*, 398 F.3d at 188 (quoting *Rodriguez*, 72 F.3d at 1061).

Where due process claims are against medical professionals, such as the doctor and nurse defendants in this case, the Second Circuit asks whether the professional's decision implicating due process is "such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [the defendant] actually did not base the decision on such a judgment." *Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996) (quoting *Youngberg*, 457 U.S. at 323). The substantial departure standard "requires more than simple negligence on the part of the doctor but less than deliberate indifference." *Id.* Whether a medical professional has acted in accordance with her professional judgment is ordinarily established by expert testimony of the relevant medical standards, making judgment of this issue at the motion to dismiss stage especially perilous. *Olivier*, 398 F.3d at 190.

Applying these rules, and drawing all inferences in Lurch's favor, Plaintiff sufficiently alleges that Moving Defendants departed from professional standards by involuntarily evaluating him, using wrist and ankle restraints, and administering antipsychotic drugs that Plaintiff did not consent to and to which Plaintiff claimed he was allergic. Accepting Lurch's

version of the story as true, it appears that at worst, Plaintiff disagreed with a cashier, Compl. 6, called a police officer an expletive in a "demanding tone" because his handcuffs were too tight, *id.* at 8-9, and twisted and turned while he was already shackled, *id.* at 11—actions which do not amount to Plaintiff being a "danger either to h[im]self or to others." *See Olivier*, 398 F.3d at 188. Plaintiff thus states a plausible claim for relief.

Moving Defendants cite hospital records indicating that Plaintiff was "acting out in public," "trying to fight with people," and "acting erratically, warranting further evaluation and possible intervention," Def. Mem. 4, 9, ECF No. 62, to support their claim that the records "provide a strong basis" for the hospital's actions, *id.* at 11. This may be so. It is not, however, the Court's task at this stage to weigh the credibility of the hospital's records against Plaintiff's allegations. Rather, the Court "must assume the factual allegations in the complaint to be true," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015), "even if [they are] doubtful in fact," *id.* (quoting *Twombly*, 550 U.S. at 555 (alteration in original)).[3]

It is correct, as Moving Defendants note, that when Plaintiff quoted from and relied upon the Bellvue Hospital records, these records became "incorporated by reference in the complaint." *See Difolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). However, the Court is not required to accept the records as accurate. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674-75 (2d Cir. 1995) (holding that it was reversible error for the district court to assume the truth of a document appended to the complaint where plaintiff pleaded that the document was inaccurate).

---

[3] Moving Defendants ask that this motion be construed in the alternative as a motion for summary judgment. Def. Mem. 6. However, the Court declines to convert this to a motion for summary judgment before the *pro se* plaintiff has had "an opportunity to take relevant discovery and to submit any evidence relevant to the issues raised by the motion." *See Hernandez v. Coffey*, 582 F.3d 303, 309 (2d Cir. 2009).

Here, Lurch disputes the veracity of the hospital records, alleging that they contain "equivocal and contradicting findings." Compl. 20. Where, as here, a Plaintiff challenges the accuracy of attached materials and pleads his own version of events, the Court is obligated to assume the truth of Plaintiff's factual allegations. *See Iqbal*, 556 U.S. at 679; *DiFolco*, 622 F.3d at 111 ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."); *see also Friedman v. Self Help Cmty. Servs.*, No. 11 Civ. 3210, 2015 WL 1246538, at *16 (E.D.N.Y. Mar. 17, 2015) (finding that the court may rely on case file notes as accurately reflecting the events of a date when plaintiff did not dispute the accuracy of the case file and when they were incorporated by reference into plaintiff's complaint), *aff'd sub nom. Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44 (2d Cir. 2016).

Accordingly, Defendants' motion to dismiss Lurch's substantive due process claims is DENIED.

B. Procedural Due Process

Procedural due process protects citizens "against arbitrary, capricious, and unreasonable government action." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 589 (1972) (Marshall, J. dissenting). To succeed on a procedural due process claim, Plaintiff must demonstrate "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks and citation omitted).

First, the parties do not dispute that involuntary hospitalization and the involuntary administration of medicine implicate significant liberty interests, Def. Mem. 13; *Olivier*, 398

F.3d at 188, and as discussed above, Plaintiff adequately alleges that he was deprived of such liberty. *See supra* Part III.A.

The second factor, the sufficiency of the procedures, presents a closer question. In *Project Release v. Prevost*, the Second Circuit evaluated New York's involuntary commitment regime and held that it satisfies the constitutional minimum of due process. 722 F.2d 960, 970 (2d Cir. 1983). Accordingly, "[w]here each of the relevant provisions of the Mental Hygiene Law have been followed, there is no procedural due process violation." *Matthews v. City of New York*, No. 15 Civ. 2311, 2016 WL 5793414, at *7 (S.D.N.Y. Sept. 30, 2016 (alterations omitted)) (quoting *Kraft v. City of New York*, 696 F. Supp. 2d 403, 417 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011)).

New York's Mental Hygiene Law permits a hospital to involuntarily treat a patient without a hearing or court order if there are "reasonable grounds for belief that the patient may be in need of involuntary care and treatment." N.Y. Mental Hyg. Law ("M.H.L.") § 9.13 (McKinney 2017). The law further permits psychiatric emergency departments to "retain a person for a period of seventy-two hours" without a hearing when they are "alleged to have a mental illness . . . which is likely to result in serious harm to the person or others." *Id.* § 9.40(a).

Here, construing Plaintiff's complaint "to raise the strongest claims that it suggests," *Williams*, 829 F.3d at 122, Plaintiff states a claim for a violation of his procedural due process rights. As part of his claim, Lurch alleges that Defendants did not adhere to the procedures set forth in the Mental Hygiene Law. *See, e.g.*, Pl. Mem. 7-8 ("[D]efendants did not comply with M.H.L. 9.13 . . ."). Although Moving Defendants argue that Plaintiff was "an imminent danger to himself or others," Def. Mem. 13, which would permit his involuntary hospitalization under the Mental Hygiene Law, Plaintiff's allegations, which the Court must accept as true, belie such

9

a characterization. *See, e.g.*, Compl. 8-10. Indeed, Plaintiff also alleges that Moving Defendants entered false information into his case file and wrongfully characterized him as dangerous, *see* Pl. Mem. 7-9, providing further support for his procedural due process claim, *see Matthews*, 2016 WL 5793414, at *7 (holding that a plaintiff states a claim for procedural process where she alleges that the hospital entered information "with little regard for the truth"). At the motion to dismiss stage, without the benefit of discovery, the Court is satisfied that Plaintiff adequately states a claim for a violation of his procedural due process rights.

Accordingly, Moving Defendants' motion to dismiss the procedural due process claim is DENIED.

IV.  False Arrest

Involuntary hospitalization "constitutes a seizure within the meaning of the Fourth Amendment" and is "tantamount to the infringement of being arrested." *Kraft*, 696 F. Supp. 2d at 415 (S.D.N.Y. 2010) (citing *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993). For an involuntary hospitalization to comply with the Fourth Amendment, it "may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Id.* at 415 (quoting *Glass*, 984 F.2d at 58).

Moving Defendants argue that this claim should be dismissed because Plaintiff fails to allege "that Hospital defendants did not comply with the governing legal standard." Def. Mem. 14. Although not a model of clarity, Plaintiff's complaint adequately alleges failure to comply with the governing legal standard. *See, e.g.*, Compl. 34 ("[Defendants fail] to satisfy the standard legal requirements before certain actions can be implemented in regards to involuntarily committing a patient."). Plaintiff goes on to allege that Moving Defendants' finding of

10

"dangerousness" was not "substantiated by any behavior exhibited by the plaintiff." *Id.* at 35. The factual allegations in the complaint therefore permit the court to draw the reasonable inference that Moving Defendants did not satisfy the governing legal standard, which requires Plaintiff to suffer from "a mental illness . . . which is likely to result in serious harm to the person or others" before he can be involuntarily seized. M.H.L. § 9.40(a).

Accordingly, Moving Defendants' motion to dismiss the false arrest claim is DENIED.

V.  Negligent Infliction of Emotional Distress

Plaintiff's final claim is negligent infliction of emotional distress. As Moving Defendants correctly point out, Def. Reply 7, ECF No. 76, under New York law plaintiffs can only invoke emotional distress claims as a "last resort." *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing *Fischer v. Maloney*, 43 N.Y.2d 553, 402 (1978)). Thus, where the conduct complained of is encompassed by a traditional claim, such as false arrest, an emotional distress claim is barred. *See Elleby v. City of New York*, No. 15 Civ. 109, 2016 WL 4367962, at *4 (S.D.N.Y. Aug. 11, 2016) ("Because the allegations undergirding this claim are the same as those supporting his false arrest and Fourth Amendment claims, his claim for intentional infliction of emotional distress must be dismissed.").

Because Plaintiff has a viable false arrest claim, his claim for negligent infliction of emotional distress is not a "last resort." Accordingly, Moving Defendants' motion to dismiss the negligent infliction of emotional distress claim is GRANTED.

## CONCLUSION

For the reasons stated above, Moving Defendants' motion is GRANTED in part and DENIED in part. Defendants' claims for municipal liability and negligent infliction of emotional

distress are dismissed. Defendant's claims for substantive due process, procedural due process, and false arrest are not dismissed and those claims may proceed to discovery.

The Clerk of Court is directed to terminate the motions at ECF Nos. 59 and 63 and to mail a copy of this order and all unpublished cases cited herein to Plaintiff *pro se*. The Clerk of Court is further directed to terminate the New York City Health and Hospitals Corporation from this action and to amend the caption.

SO ORDERED.

Dated: June 28, 2017
      New York, New York

_____
ANALISA TORRES
United States District Judge