# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Robert Derck Lurch Sr.

_____

**Write the full name of each plaintiff.**

No. _16 C V 2517_
(To be filled out by Clerk's Office)

-against-

The city of new york, NYCHHC, MD

France chaput, RN maria marquez,

NYPD officers (4)

**Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.**

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☑ Yes    ☐ No

2017 MAR -3 PM 3: 26
RECEIVED SDNY DOCKET UNIT

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/3/17

Rev. 5/6/16

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "Bivens" action (against federal defendants).

☑ Violation of my federal constitutional rights

☐ Other: _____

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

| Robert | D | Lurch |
|--------|---|-------|
| **First Name** | **Middle Initial** | **Last Name** |

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

DiN# 16A2468

**Prisoner ID #** (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Franklin Correctional Facility

**Current Place of Detention**

62 Bare Hill rd., P.e. Box 10

**Institutional Address**

| Franklin/Malone | NY | 12953 |
|-----------------|-----|-------|
| **County, City** | **State** | **Zip Code** |

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☑ Convicted and sentenced prisoner
☐ Other: _____

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

**Defendant 1:**

The City of    New york
First Name | Last Name | Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City | State | Zip Code

**Defendant 2:**

NYC H+C
First Name | Last Name | Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City | State | Zip Code

**Defendant 3:**

Maria | Marquez
First Name | Last Name | Shield #

RN
Current Job Title (or other identifying information)

Current Work Address

New York | NY | 10016
County, City | State | Zip Code

**Defendant 4:**

France | cheput
First Name | Last Name | Shield #

MD
Current Job Title (or other identifying information)

Current Work Address

New York | NY | 10016
County, City | State | Zip Code

Page 3

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

**Defendant 1:**

| Jonathan | Rivera | 14532 |
|---|---|---|
| First Name | Last Name | Shield # |

Police officer
Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 2:**

| Edward | Testa | 28538 |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 3:**

| amar | Bhairam | 1382 |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

**Defendant 4:**

| Gregory | Kosarek | retired |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

## V. STATEMENT OF CLAIM

Place(s) of occurrence: _Bellevue ED / Hallway to CPEP / CPEP (Adult)_

Date(s) of occurrence: _December 26/2013 8:00PM - December 27/2013 12 PM_

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_-See Attached-_

## Facts of the Incident

**Date: 12/19/2017**

On Dec. 26, 2013 I had just moved to new york the day before on christmas day. I had a few drinks at a friend's birthday party and went to go grab a bite to eat, so I went drink on a empty stomach. I went to a Dine-In/Take out asian restaurant on the corner of west 29th Street and Ninth avenue In manhattan, when I got to the restaurent I ordered a meal that came up to $6.99, roughly $7.

I handed the cashier a $20 bill and waited for my meal to be prepared. When my food was done the cashier handed me my meal and tried to hand me three 1 doller bills with change. I took my meal and refuse the change. I then told the cashier you must be confused I handed you a $20 doller bill. She started yelling "no no you hand me $10 dollers bill, I call Police". I agreed with her decision to let the authorities resolve the matter by stating "thats what you should do because Im not leaving without my charge".

When the officers entered the restaurant they Inquired "whats the problem?" I informed the officers that the cashier Is mistaken on the issue of how much change to give me, she thinks I gave her a $10 doller bill, when I In fact handed her a $20 doller bill. The cashier look at the officers and said he's lying. I told the officers Im not lying you can run the camera's back and see the correct examination. The cashier could of also closed out the cash register and the total amount would of been $10 dollers over.

The officers Looked at the cashier and told her she doesn't

have to run the camera's back. Then they look at me telling me to leave. I informed the officers until they investigate Im not leaving, I want my charge. The cops then grabbed their guns, repeating thier earlier command, telling me to leave. I told the officers "what you guys are going to kill me in front of all these people then kill me, I want my charge". I further stated "Im the one reporting a crime and Im the one getting threatened, this is unfair". An officer then knocked my food out of my hand and said what your suicidal, grabbing me. He then placed me under arrest and took me outside.

While outside, I asked the officer what Im arrested for, he didnt respond. I then stated "I didnt commit a crime, so you cant take me to jail". The officer then stated "your not going to jail", but didnt elaborate on where I was going. When the EMS arrived, I knew I was being transported to the hospital. The officer that arrested me, entered the ambulance with me as my escort. I asked the ems worker to tell the officer to loosen my handcuffs, their hurting. The ems worker asked and the officer responded by saying he's a prisoner.

When I arrived in the ED of Bellevue Hospital Center, I was escorted by the arresting officer that rode in the ambulance with me. The Doctor (MD cheput) approached and asked the officer what events lead up to you bringing the patient to the hospital. The officer then lied and stated "He didnt pay for his food at a chinese restaurant and was breaking things". The Doctor then asked me

Pg. 2 of 6

what happened? Before I spoke the officer Looked at the Doctor and said give him something to calm him down he's acting up. I then explained to the Doctor that I payed for my meal with a $500 doller bill and when I received my meal with change, I was shortchanged by $10 dollers. I then asked the Doctor can you tell the officer to unhandcuff, they are to tight, and Im not In custody. Before the Doctor asked the question, the officer told her "Im not uncuffing him, give him something to calm him down".

Confused the Doctor asked the officer was I under arrest? He stated "no, but you should give him something to calm him down he's acting up". The Doctor told me to finish explaining what happen. I told her that I told the cashier to call the Police to resolve the issue and when the police arrived I informed them of the situation. I then suggested that they run the camera's back to substantiate my allegations and they tried to force me to leave for no reason.

The officer interrupted me stating "he's lying" and since my wrist were going numb from the tightness of the handcuffs, I requested a second time that my handcuffs should be removed. The officer again stated "no". I told him "your a bitch, you do not have me under arrest but you do not want to unloosen my handcuffs, your abusing your authority". The doctor said "sir", I guess trying to tell me to watch my mouth, I told the doctor my wrist are going numb, Im not under arrest, tell him to uncuff me.

P3. 3 of 6

I said it in a kind of demanding tone but I was in excruciating pain from being handcuff to tight, so I was upset. Furthermore, I was upset with the Doctor for being so concern because I called the officer a derogatory term but not being assertive enough to tell the officer to remove the handcuffs. Because since she was already informed I was not under arrest, the officer was no longer justified in having me restrained. Since pursuant to M.H.L. 9.41, an officer can detain a person they think is mentally ill and danger to themselves or others, only for the time period prior to them being seen by a Doctor. Once I was engaged in conversation with MD Chaput, the officer right to detain, no longer existed. Which MD Chaput should have known.

When I demanded that MD Chaput tell the officer to remove the handcuff's because I was not under arrest and therefore no longer in the custody of NYPD, she didn't respond. The officer picked up on the vibes that MD Chaput was giving off that she didn't like the tone I talked to her in by being unrespective and manipulated the situation. Before she did respond he stated "see he's acting up, give him something to calm him down". She then stated she will and told the officer to cuff me to the chair. I told the Doctor I didn't do anything, I want to go home, and I dont want any medication.

She disregarded what I said and reassured the officer I will be given medicine to calm me down. I told her I dont want

any medication and do not give me Haldol Im allergic. She stated how do you know about haldol, that IS what you will be receiving. I told her Im allergic the last time I was Injected I almost died. She stated I dont think your allergic, I just think you dont like what It does, I told her "miss I could die dont give It to me". The officer stated "your not so tuff now".

I started getting annoyed by the officers Igno rance of telling me Im no longer tuff because I will be given a medication that's already listed as an allergy and the Doctor's unprofessional conduct of actually considering to medicate me against my will with a medication I just Informed her Im allergic to. So I Informed the Doctor, She can Fax Holly Hills hospital In north carolina for my records, Im allergic I told her. Futhermore, I told her Im not consenting to being given any medication at that moment She showed me She Lacked the common sense of an normal adult with someone In their care, A teenage girl babysitting a child Knows not to give that child something their allergic to. So for me to have this conversation with a Doctor In Bellevue hospital was Shocking.

The Doctor at that moment stated "I think we need ankle and wrist restraints for you since your denying medication. She told one of the nurses to tell the staff bring a hospital gurney with ankle and wrist restraints he's refusing medication, I was uncuffed from the ED chair and forcefully placed on the hospital gurney. I was

then wheeled toward the Adult CPEP. as I was being escorted,
the Doctor told the nurse prepare the needle for Injection.
I asked the nurse what was I being Injected with and she
told me Haldol. I told her Im allergic and dont Inject me
I can die. The Doctor Informed the nurse that I wasn't allergic
and she told her to Inject me.

at that moment I started twisting left and right In
a futile attempt to free myself from the ankle/wrist restraints
and to prevent the nurse from Injecting me. The Doctor ordered
the staff to hold me still and at that moment I began crying from
the fear of dying from another reaction, seconds before being
Injected, I cried and begged the nurse not to Inject me. I
stated "Im allergic I could die fax Holly Hills for my records
please dont I could die". I was Ignored and Injected anyway.
I passed out as a result from being Injected with Haldol and
didnt wake up until the next day.

Claim #1:
against MO
chaput/NYC
◯ HHC

Unreasonable use of restraints

| | |
|---|---|
| Constitutional violation | In 1982, youngberg v. Romeo established the general proposition that patients committed to state custody have a constitutionally protected liberty Interest In being free from unreasonable bodily restraints (457 U.S. 307, 315-16, 102 S. ct 2452, 73 L.Ed. 2d 28 |
| pg. 1 of 3 | (1982)). |
| States Interest In maintaining safety | This constitutional protection is not absolute, however. It may be curtailed when medical authorities, In the exercise of professional judgement, determine that the liberty Interest is outweighed by the state's Interest In maintaining safety (Id. at 321-22, 102 S. ct. 2452). |
| 14 NYCRR 526.4 | (b) General Principles |

(1) Purpose of Intervention

(i) management of violent or self-destructive behavior. Restraint and seclusion are safety Interventions which may be used for purposes of managing violent or self-destructive behavior only In emergency situations If such Intervention is necessary to avoid imminent, serious Injury to the patients or others, and less restrictive Interventions have been utilized and determined to be Ineffective, or In rare Instances where the patient's dangerousness is of such Immediacy that less restrictive Interventions cannot be safely employed. Such restraint or

Seclusion shall only be used for the duration of the emergency.

| | |
|---|---|
| 14 NY CRR | (17) the following rights apply to patients who reside in an inpatient/ |
| 815.5 | residential setting: |
| | |
| Pg. 2 of 3 | (v) to be free from restraint or seclusion |

| | |
|---|---|
| Facts of the | MD choput ordered ankle and wrist restraints after she was informed |
| Incident | by the plaintiff that he is allergic to Haldol and that he's not consenting |

to being medicated. This physician ordered ankle/wrist restraints for
plaintiff, to assist her in forcibly medicating the plaintiff in a
non-emergency situation. At the time it was ordered that the plaintiff
should be placed in ankle/wrist restraints, there was no risk of
imminent danger to staff or plaintiff (manifested by threats or attempts
of suicide) nor was the plaintiff in a position to cause such harm.
At the time of the order, plaintiff was handcuffed to a chair bolted in
place in the ED department of Bellevue Hospital Center, conversing about
the potential fatal effects of the proposed treatment with MD choput.
Now even though I'm not a physician, it is unreasonable to order restraints
in a non-emergency situation, just to forcibly medicate someone with
a medication that the person is allergic to.

Furthermore, pursuant to 14 NYCRR 526.4, such restraint or seclusion
shall only be used for the duration of the emergency. Since there was
no emergency, except for the unsubstantiated and equivocal findings that
wasn't corroborated by a detailed account of plaintiff's behavior, this

pg. 3 of 3

Use of restraints In a non-emergency situation IS not justified by Law. It violated the plaintiff's constitutional liberty right to be free from unreasonable body restraints ('457 U.S. 307) and NY patients Bill of rights to be free from restraints or seclusion pursuent to 14 NYCRR 815.5 (17)(v). The plaintiff was not exhibiting violent or self destructive behavior at the time of the order, which means there was no emergency situation at the time this safety intervention was ordered. Therefore, as a matter of Law, the ordering of restraints for a non-emergency situation IS not justified.

claim #2
against
MD chaput / NYC
HHC / RN merquez

Force Medication

constitutional
violation

Due Process protects the "fundamental right [of psychiatric patients] to refuse antipsychotic medication" (Rivers v. Katz, 67 NY2d 485, 492 [1986] reargr denied 68 NY2d 808 [1986]; See Kulak v. City of New York, 88 F3d 63, 74 [1996]).

14 NYCRR
27.8

(b) Effect of objection on treatment process.

(1) Emergency treatment. Facilities may give treatment, other than treatment for which Informed consent Is required by Section 27.9 of this Part, at any time to all patients, despite objection In a case where the treatment appears necessary to avoid serious harm to life or limb of the patients themselves or others. Emergency treatment In situations covered by Section 27.9 shall be pursuant to such section.

care and treatment
right to object

(2) Patients on voluntary or Informal status. Patients who are on a voluntary or Informal status may not be given treatment over their objection. When any such patient objects to all recommended forms of treatment, the facility director may, after notification to the patient, discharge the patient with recommendations for outpatient care If Indicated, or, If appropriate, take steps to convert the patient to Involuntary status as set forth In the mental hygiene law. When a patient Is discharged because of objection to all recommended forms of treatment, the facility director should have the patient's family notified If feasible.

Pg.1 of 14

(3) Patients on Involuntary Status. Patients held on Involuntary status may be given treatment over their objections only if the following conditions are complied with:

(iv) If conditions specified in paragraph (1) of this subdivision (need for emergency treatment) are present.

14 NYCRR 526.4

(a) Definitions

Restraint and Seclusion

(3) Drug used as a restraint — means a drug or medication when it is used as a restriction to manage the patient's behavior or restrict the patient's freedom of movement and is not a standard treatment or dosage for a patient's medical or psychiatric condition, or as otherwise defined in Federal regulations of the centers for medicare and medicaid services.

(4) Emergency — means a situation in which a patient's behavior creates an imminent threat of serious injury to the patient or another person, where there is the present ability to effect such harm. For purposes of this section, a threat to property shall not be considered an emergency.

(6) Manual restraint — means the use of a manual or physical method to restrict a person's freedom of movement or normal access to his or her body. The term manual restraint means and includes the

Pg. 2 of 14

term physical restraint.

(7) Mechanical restraint - means an apparatus which restricts a patients movement of the head, limbs, or body, and which the patient is unable to remove, provided, however, this term may also apply to an apparatus not normally used for this purpose, such as a bed rail or bed sheet, if the patient is not able to release the mechanism.

(11) Physical escort - means the use of a light grasp to escort a patient to a desired location, which the patient can easily remove or avoid.

(12) Restraint - means any manual method, mechanical device, or pharmacologic measure which immobilizes or reduces the ability of an individual to freely move his or her arms, legs, body, or head. For purposes of this part, restraint means and includes manual restraint, drug used as a restraint, and mechanical restraint.

(b) General Principals.

 (1) Purpose of Intervention.

  (i) Management of violent or self-destructive behavior. Restraint and seclusion are safety interventions which may be used for purposes of managing violent or self-destructive behavior only in emergency situations if such intervention is necessary to avoid imminent, serious

P3.3 of 14

Injury to the patient or others, and less restrictive interventions
have been utilized and determined to be ineffective, or in rare
instances where the patient's dangerousness is of such immediacy
that less restrictive interventions cannot be safely employed. Such
restraint or seclusion shall only be used for the duration of the
emergency.

(2) Restraint or seclusion for any purpose shall never be utilized as
punishment, for the convenience of staff, to substitute for inadequate
staffing, or as a substitute for treatment programs.

(c) Restraint and seclusion to manage violent or self-destructive
behavior.

   (1) General conditions for use:

      (i) The use of restraint and seclusion to manage violent
or self-destructive behavior in a facility must be in accordance
with the written order of a physician and selected only when:

      (a) less restrictive measures (including any such interventions
that have been identified in a patient's behavior management
plan), have been utilized and found to be ineffective to protect
the patient from seriously injuring self or others, or

(b) In rare Instances where the patients dangerousness is of such Immediacy that less restrictive Interventions cannot be safely employed.

(2) Simultaneous use: a mechanical restraint and Seclusion shall not be used simultaneously.

(i) General orders for the use of restraint or Seclusion:

(a) must be In writing and signed by a physician;

(b) must be based on a personal, face-to-face examination by the physician which Includes both a physical and psychological examination of the patient;

(F) shall never be written as a standing order or on an as-needed basis (PRN order).

| | |
|---|---|
| 14 NycRR | (17) the following rights apply to patients who reside In an Inpatient/residential Setting: |
| 815.5 | |
| | |
| patient rights | (v) to be Free from restraint or Seclusion |

Pg. 5 of 14

| | |
|---|---|
| Facts of the Incident | According to the medical records of the incident, there are two different admission status findings. Even though these records are full of equivocal and contradicting findings, I will formulate arguments for both findings. To show the court the physicians actions was a matter of law, was not justified. |
| Voluntary admission status Finding | Pg. 13 of 37 of the medical records from the incident<br>Source of Referral: Self, Family, or Friend<br>Patient's chief complaint: psy eval<br>Reason For v.s:+ at triag: Psych eval |
| Involuntary admission status Finding | Pg. 9 of 37<br>ED alert: NYPD Present<br>Restraints: Patient brought in to ED in handcuffs<br>Psych risk assessment: Patient sent for psychiatric evaluation and/or clearance<br>Destination: Adult CPEP with Escort |
| Forcible medication not justified at voluntary status | Now in regards to the voluntary admission status Finding, which suggest the plaintiff voluntarily admitted himself to the Adult CPEP, a patient can not be treated over his objection with this status. Pursuant to 14 NYCRR 27.8(b)(2), when a patient on voluntary or informal status objects to all forms of treatment, the facility must discharge the patient or if appropriate take the steps to convert the |
| Pg. 6 of 14 | patient to involuntary status as set fourth in the mental Hygiene Law, |

| | |
|---|---|
| Forcible medication not justified because of Involuntary Status either | Now In regards to the Involuntary admission status Finding, which suggest the Plaintiff was involuntarily admitted to the Adult CPEP for a pre-arraignment psychiatric clearance, a patient can not be treated over their objection without a judicial hearing except for In an emergency situation pursuant to 14 NYCRR 27.8 (b)(3)(iv). I will now Demonstrate to the court why this was a non-emergency situation and therefore treatment over a patient's objection without a judicial Hearing was not justified. |

Dangerous Finding (1):

pg. 21 of 37    Adult CPEP cert--cont'd

Diff dx include Substance related d/o NOS, psychotic d/o NOS, mood d/o NOS, r/o psychotic and mood d/o due to GMC. Pt IS at acute risk of harm to others given recent violence, agitation at arrival In CPEP. He will be placed on hold for safety and re-assess when he IS able to cooperate.

Dangerous Finding (1) contradicted/patient was Sedated on arrival at CPEP:

pg. 13 of 37: Shows RN Marquez couldn't complete her RN assessment because Plaintiff was Sedated. Most of finding State unable to obtain or assess.

which shows MD chaput finding on pg. 21 of 37 was falsified because IF plaintiff was sedated on arrival, how could plaintiff exhibit violence and agitation on arrival at the CPEP.

Dangerous Finding (1): Not credible

Dangerous Finding (2):

Pg. 10 of 37

Pt is a 23 yo BM with unknown psychiatric hx B/B EMS after he became disruptive in a chinese restaurant did not pay for his food and started breaking things at arrival Pt. is agitated, threatening NYPD (he is not in custody) and unable to cooperate. He was placed in wrist and ankle restraint and was given Haldol 5mg IM and Ativan 2mg IM.

France chaput, MD

Dangerous Finding (2) contradicted/unsubstantiated:

contradiction: MD chaput states plaintiff wasn't in custody but the findings on pg. 9 of 37 shows otherwise.

Pg. 9 of 37 Ed triage note

Restraints: Patient brought In to Ed In handcuffs.

Psych Risk assessment: Patient sent for psychiatric evaluation

and/or clearance.

Destination: Adult CPEP with Escort

ED Alert: NYPd prisoner

contradiction conclusion: Not only does pg.9 of 37 shows

Plaintiff was In custody but It shows Plaintiff was a NYPd

prisoner being brought to the Adult cpep with Escort for

Pre arraignment psychiatric clearance.

unsubstantiate findings: The following conduct can be classified

as criminal conduct such as being disruptive, not paying for

food, breaking things, and threatening NYPd. The plaintiff was

accused of all of these allegations but not charged. The plaintiff

was accused of threatening NYPd by MD chaput In the medical

records but the substance of the threat (what was said) was

never documented. without description of what was said, plaintiff

being charged, and proof substantiating these allegations, these

allegations are nothing more than mere allegations. Futhermore,

since the name of person who brought the plaintiff alleged to

have a mental illness to the program and provided the details of

the circumstances leading to the plaintiff being brought for Inudunters

hosp.talization wasnt documented as required by MHL §9.40,

there Is no way to clarify these Findings or provide proof In

Future Proceedings.

Dangerous Finding (3):

Pg. 15 of 37

comment: Patient was b:b ems agitated and threatening staff
combative yelling and cursing and not amenable with redirection
per MD Chopot received ativan 2mg and Haldol 5mg im stat
@ 2110 and was placed on wrist and ankle restraints 2110

Maria O Marquez, RN (26 Dec 13
2127)

Dangerous Finding (3) contradicted/unsubstantiated:

| contradiction | RN Marquez changed the order of the Force
medication and the ankle/wrist restraints to justify the
medical necessity of the plaintiff being found to be a danger
to himself and others at the time he was medicated. She changed
it to make it look like plaintiff wasn't being restrained at the of
the Force medication by ankle/wrist restraints. Because if he was
in Fact restrained then the force medication would not be justified
because the plaintiff could not be considered a danger without the is
USE of his hands or feet. However MD Chopot Findings made before and

after this finding, shows the correct order of the restraint/ treatment.

MD output finding made before RN Marquez falsified finding:

P3.10 OF 37

Pt is a 23 yo BM with unknown psychiatric hx BIB EMS after he became disruptive in a chinese restaurant, did not pay for his food and started breaking things. at arrival pt is agitated, threatening NYPD (he is not in custody) and unable to cooperate. He was placed in wrist and ankle restraint and was given Haldol 5 mg Im and Ativan 2 mg Im.

pg. 18 of 37 (made after falsified finding)

Pt is a 23 yo BM with unknown psychiatric hx B-B EMS after he became disruptive in a chinese restaurant, did not pay for his food and started breaking things. at arrival pt is agitated, threatening NYPD (he is not in custody) and unable to cooperate. He was placed in wrist and ankle restraint and was given Haldol 5 mg Im and Ativan 2 mg Im. He cannot be interviewed at this time due to sedation.

This documented sequence of events in regards to the restraint/

treatment is the correct order.

allegations unsubstantiated (Dangerous finding #3); RN Neiguez
stated plaintiff yelled, cursed, and threatened staff. all of these
actions are verbal and expressed in words. However the substance
of what was yelled, cursed, or what threat was made to staff
is not documented. without stating what was said, these
accusations are mere allegations that can't be used to justify
the force medication.

Evidence showing plaintiff was not a danger at the time the injections
was administered:

Pg. 18 of 37 (MD chart)

Pt is a 23 yo BM with unknown psychiatric hx B/B EMS after
he became disruptive in a chinese restaurant, did not pay for his
food and started breaking things. at arrival pt. is agitated,
threatening NYPD (he is not in custody) and unable to cooperate. He
was placed in wrist and ankle restraint and was given Haldol 5mg
im and ativan 2mg im, he cannot be interviewed at this time
due to sedation.

Since plaintiff did not have use of his hands or feet at the
time the sedative (which is also a restraint pursuant to 14 NYCRR

Pg. 12 of 14

526.4 (a)(3)) was administered, the forcible medication was not justified. Since the alleged dangerousness was already mitigated by the use of ankle/wrist restraints at the time of injection. The ankle/wrist restraints that were implemented pursuant to 14 NYCRR 526.4 (b)(1)(i), already managed the alleged violent or self destructive behavior, without being determine to be ineffective, once the plaintiff was secured by these restraints, this encounter became a non-emergency situation, which the provisions of 14 NYCRR Section 27.8 clearly states a patient on involuntary admission status can only be treated over their objection in a emergency situation. Now pursuant to 14 NYCRR 526.4 (a)(4), an emergency means a situation in which a patient's behavior creates an imminent threat of serious injury to the patient or another person, where there is the present ability to effect such harm. Once the ankle/wrist restraints were already restraining the plaintiff, the plaintiff could no longer be considered an imminent threat of serious injury to the himself or others (lacking the ability to effect such harm). Since this was a non-emergency situation, the courts held In Rennie v. Klein that the state must first provide procedural due process or in other terms a judicial hearing before the state can override an involuntarily committed patient's right to refuse anti-psychotic medication (720 F.2d 266). In Brandt v. Monte the court held if a patient does not legitimately present a danger and the emergency procedure is

used merely as a pretext to induce the patient's consent, then his right to refuse antipsychotic drugs has been violated (626 F.supp.2d 469 (2009)).

Claim #3
against:
NYCHHC/MD
Chaput

## False arrest against

## NYCHHC/MD

## Chaput

**Constitutional violation**

An Involuntary confinement to a hospital constitutes a seizure within the meaning of the Fourth amendment (Glass v. Mayas, 984 F.2d 55, 58 (2d. Cir. 1993); Drozdik, 2003 WL 366639, at #5).

**False arrest**

Such an Infringement Is "tantamount to the Infringement of being arrested." (Glass, 984 F.2d at 58 (Internal citation omitted).

**Fourth amendment requirements**

"The Fourth amendment requires that an Involuntary hospitalization 'may be made only upon probable cause, that Is, only if there are reasonable grounds For believing that the person seized Is subject to seizure under the governing legal standard'." (Id. (quoting Villanova v. Abrams, 972 F.2d 792, 795 (7th cir. 1992)).

**Governing Legal Standard**

Pursuant to N.Y. Mental Hyg. Law §9.40 (a) (2009), a comprehensive psychiatric emergency program can retain a person for a period of seventy-two hours when the Individual Is alleged to have a mental Illness For which Immediate observation, care, and treatment In such program Is appropriate and which Is likely to result In serious harm to the person or others. Under N.Y. Mental Hyg. Law §9.39 (a), a hospital can admit a person on that same basis

and retain him for a period of fifteen days. N.Y. Mental Hyg. Law §9.39(a) requires that this finding be made before the individual is committed for an extended period of time.

| what is required under M.H.L. 9.39 | In accordance with M.H.L. §9.39(a), "likelihood to result in serious harm" is defined as (1) a substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or (2) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm. |

| applicable Law | Thus, "In order to retain a patient in a hospital for involuntary psychiatric care, the hospital must establish by clear and convincing evidence that the patient is mentally ill and in need of further care and treatment, and that the patient poses a substantial threat of physical harm to himself or to others "(matter of John P., 265 AD2d 559, 559 [2nd Dept 1999] [emphasis added]; See also matter of Seltzer v. Greece S., 213 AD2d 412 [2nd Dept 1995]; matter of William E., 196 Misc 2d 51, 54 [Sup ct, Oneida county 2003]). |

| | |
|---|---|
| Mental Illness Finding | P3.17 of 37 |
| | Thu, 26 Dec (2133 Pm)  CPEP Interim Disposition note |
| | Dispo Date/time: Thu, 26 Dec 2013  2133 |
| | Interim Disposition: Hold |
| | Primary Diagnosis: unspecified psychosis |
| | Medical necessity: Significant danger to Self or others |
| | Finding (1)                    Franco choput, MD (26 Dec 13 2134) |
| Evaluation of Finding | according to the earliest date/time shown in the records of when this Finding was made which is Dec.26,2013 at 9:33 PM, this diagnosis was made while plaintiff was sedated (see P3.13 of 37, Plaintiff sedated upon arrival in Adult CPEP on Dec.26,2013 at 9:14 Pm) |
| Dangerousness Findings | Thu, 26 Dec 2058 ED Triage note        P3.9 of 37 |
| | Suicide/Homicide: Suicidal?:no   Homicide?:no |
| | Finding (2)                  Kazumi Inose, RN (26 Dec 13 2059) |
| P3.3 of 12 | |

Thu, 26 Dec 2111 Psychiatry attending other note   P3.10 of 37

Note (WP): Pt IS a 23 yo BM with unknown psychiatric hx BIB EMS after he became disruptive In a chinese restaurant, did not pay for his food and started breaking things. at arrival Pt IS agitated, threatening NYPD (he IS not In custody) and unable to cooperate. He was placed In wrist and ankle restraint and was given Haldol 5mg Im and Ativan 2 mg Im.

Finding (3)                          France Chopot, MD (26 Dec 13 2142)

P3.15 of 37

Thu, 26 Dec 2117 CPEP RN assessment (Adult)  --cont'd

Barriers to assessment: Patient agitated or threatening

comment: Patient was bib ems agitated and threatening staff combative yelling and cursing and not amenable with redirection per MD chopot received ativan 2 mg Im stat and haldol 5 mg Im stat @2110 and was placed on wrist and ankle restraints 2110

Finding (4)                    Maria D marquez, RN (26 Dec 13 2127)

Thu, 26 Dec 2135 Adult CPEP CAF    Pg. 18 of 37

History of Present Illness: Pt is a 23 yo BM with unknown
psychiatric hx BIB EMS after he became disruptive in a
chinese restaurant, did not pay for his food and started
breaking things. at arrival pt is agitated, threatening
NYPD (he is not in custody) and unable to cooperate. He was
placed in wrist and ankle restraint and was given Haldol
5 mg Im and ativan 2 mg Im. He cannot be interviewed at
this time due to sedation.

Finding(5)                  France Choput, MD  (26 Dec 13 2141)

Thu, 26 Dec 2135 Adult CPEP CAF --cont'd    Pg. 21 of 37

Diff dx include substance related d/o NOS, psychotic d/o NOS,
mood d/o NOS, r/o psychotic and mood d/o due to GMC. Pt is at
acute risk of harm to others given recent violence, agitation
at arrival in CPEP. He will be placed on hold for safety and
re-assess when he is able to cooperate

Finding(6)                  France Choput, MD  (26 Dec 13 2141)

| | |
|---|---|
| Evaluation of dangerousness Findings | These Findings state Plaintiff threatened NYPD and hospital staff but doesn't describe what was said that constituted as a threat, which makes these baseless findings of threats being uttered, not worthy of belief. Findings state Plaintiff was violent but doesn't describe the conduct that was considered violent. Findings state Plaintiff was guilty of criminal conduct but plaintiff was never charged with criminal charges. These Findings are not supported by the details of the incident because there are no descriptions of any behavior exhibited by the plaintiff or statements made by the plaintiff to substantiate these findings. The medical records only contain mere allegations that are not supported by the details of the incident and were only documented to circumvent the governing legal standards that is required to be determined before Involuntarily committing a patient or forcibly medicating a patient. Therefore, these Findings cannot be used to justify the actions of these defendants or to satisfy the standard legal requirement before |
| PJ.6 pg 12 | certain actions can be implemented in regards to Involuntarily committing a patient or forcibly medicating a patient. |
| | |
| Both Findings required to be met under M.H.L 9.39 not determined | Since I am not a medical expert, I cant state the defendants didn't satisfy the first prong under M.H.L 9.39 of finding that the Plaintiff had a mental Illness and in need of further care and treatment. Even though plaintiff was sedated at the time this finding was made. However, the second prong of dangerousness that is required |

to be determined before a patient can be involuntarily committed
into a New York hospital's cpep program was not met according
to the records after careful evaluation of the dangerousness findings,
every finding that was documented, was found to be baseless
findings only recorded in the records to circumvent the
governing legal standards that must be complied with before involuntarily
committing a patient. These findings are mere allegations which
cant be used to justify the defendents actions. They are not
substantiated by any behavior exhibited by the plaintiff or
statements made by the plaintiff. Furthermore, these mere allegations
should not be allowed to satisfy the second prong of this
legal standard because they can not be substantiated by
the case record of the incident.

| | |
|---|---|
| Plaintiff | At the time I was involuntarily committed into the Adult |
| involuntarily | cpep program at Bellevue Hospital Center, It was documented |
| committed under | I was a NYPD prisoner going for a pre-arraignment psychiatric |
| False pretense | clearance. Which was the documented finding, according to the |
| that he was | records of the incident, of why the plaintiff was brought to the |
| a NYPD Prisoner | Adult cpep. However, the plaintiff (myself) being involuntarily |
| | committed to the Adult cpep under this false pretense of being |
| | a NYPD prisoner being admitted to the Adult cpep to be psychiatrically |
| | cleared IS illegal. Because on Dec. 26, 2013 I wasn't facing any |
| | criminal charges stemming from the incident at the chinese |
| P3. 7 of 12 | restaurant. So there IS no legal justification for committing |

me to the Adult CPEP for this reason because I wasn't a NYPD
prisoner being arraigned on any charges. Therefore, there was
no need to commit the plaintiff to the Adult CPEP for a
pre-arraignment psychiatric clearance. Because there was
no arraignment and I was not a prisoner, contrary to what
was documented. It's even In the records showing I was
released directly from the hospital and not back Into police
custody (See pg. 28 of 37).

| Evidence Proving allegations | Evidence proving my allegations plaintiff was Inveluntarily committed to Adult CPEP under the false pretense he was a NYPD prisoner going for a pre-arraignment psychiatric clearance: |
|---|---|

Thu, 26 Dec 2058 ED Triage Note          Pg. 9 of 37

Restraints: Patient brought In to ED In handcuffs.

Psych Risk assessment: Patient sent for Psychiatric evaluation
and/or clearance

ED alerts: NYPD prisoner

Destination: Adult CPEP with Escort

Mazumi InoSc, RN (26 Dec 13 2059)

| Plaintiff's | after I was Involuntarily committed to the Adult CPEP |
| admission | under the False pretense that I was a NYPD prisoner being brought |
| status switched | for a Pre-arraignment Psychiatric clearance, upon arrival at |
| to voluntary | the Adult CPEP my admission status changed to voluntary (even |
| | though I was Sedated upon arrival). |

Thu, 26 Dec 2117 CPEP RN assessment (Adult)

Arrival time to CPEP: Thu, 26 Dec 2013  2114
Source of Referral: Self, Family or Friend;
Reason For visit at Triag: Psych eval,
Patient's chief complaint psy eval

Merra D. Marquez, RN

(26 Dec 13  2127)

The source of referral Failed to mention Law enforcement
was Involved or anything about EMS (See exhibit A [Source of
referral data:157]) and Instead States plaintiff was referred
to the Adult CPEP by Self, Family, or Friend, which was not the
case. When a patient Is brought to the Adult CPEP For a
Psychiatric clearance, the patient's chief complaint Finding, Is
Suppose to list exactly that (See exhibit A [Patient's chief complaint
data: 157). However once the Plaintiff was admitted to the Adult

CPEP under the False pretense of being a NYPD prisoner, the

Patient's chief complaint finding only stated plaintiff was brought for a psychiatric evaluation, no clearance.

These records also fail to show the law enforcement details as required by law pursuant to 14NYCRR 590.12(d)(1), when law enforcement is involved. 14NYCRR 590.12(d)(1) states: when an Individual is brought to the comprehensive psychiatric emergency program by law enforcement, the officers should be Interviewed and Identified in the case record (See exhibit A [Law enforcement details])

Furthermore, pursuant to MHL 9.13(a) If a patient refers himself to a hospital's Adult CPEP Program they can only do so by a voluntary written application. However, the plaintiff never signed a voluntary written application and at the time the plaintiff left ED he was a NYPD prisoner being brought to Adult CPEP for a psychiatric clearance. Its clearly evident the plaintiff's Involuntary commitment was not justified and NYC HHC employees attempted to cover up the plaintiff's unjustified seizure by using fabricated Information.

False arrest

# EXHiBiT

## A

Pg. 11 of 12

```
Printed:14 Aug 15   1645:10        ------------------------------------
                                   |MRN:3598032                       |
Bellevue Hospital Center           |Patient:Lurch,Robert              |
462 First Avenue                   |DOB      /1990     Sex:M  Type:EP  |
New York, NY 10016                 |                                  |
                                   |Visit Date:02/25/15 Visit# 3598032-7|
                                   |Location:emergency                |
                                   ------------------------------------

                                                        Page 12 of 30


                        Outpatient Chart Print

    ================================================================

                        All Events - continued


    Wed, 25Feb 0618 CPEP RN Assessment (Adult)        Status: supplemental
Arrival Time to CPEP       : Wed, 25 Feb 2015  0538
Marital Status             : Never Married
Race/Ethnicity             : Black or African American
Religion                   : unable to obtain
Source of Referral         : Law Enforcement Involved, no EMS sheet;
Law Enforcement Details    : Law Enforcement Involvement: Arrest; Badge
                             No: 2437; Precinct district 4; C/ JJ
                             Status: Under Arrest; C/ JJ Custody:
                             NYPD; C/ JJ Referral: Emergency
                             Evaluation;

Language                   :

   Preferred Language(s)   : English

Reason for Visit at Triag: MC: Facial abrasion/contusion s/p altercation
                             with NYPD
Patient's Chief Complaint: psych clearance
Suicide/Self Harm          : New Assmt: Document new Suicide Assessment
                             screener Wish to be Dead: No, not in
                             past month Active Suicidal Thoughts:
                             No, not in past month Suicidal
                             Behavior: No, Never Self Harm
                             Indications: None
Recent Medications         : none,
Allergies Med              : Med Allergy: Haldol Symptom(s): *throat
                             swelling Source: Self  Date/Time:
                             Thu, 19 Jun 2014  0641
Allergies Other            : no known allergens
Diet                       : regular
Substance/Alcohol Use      : Substances /Alc within 12 mo: Alcohol:
                             Ethanol; Cannabis (marijuana);
                             Current Use Pattern/Impact: usually
                             daily use of alcohol (beer) and
                             marijuana but had slowed down since
                             he is unable to afford it. He is down
```

Claim #4
. 2901-54
NycHHC, MD
Chaput, RN
Merquez

### Nied claim

NycHHC Hospitals has a duty to patients under their care being provided medical services from one of their hospitals to require their employees to find out from the patient their known allergies either verbally, by records retered at the hospital, or via fax from other hospitals patient visited before administering any medicetions or providing any meals. This duty owed to patients under their care ensure's Improper medical treatment Is not given and any Ingury or death of patients In their care Is not caused by preventable medical mistakes.

When a patient Informs a Doctor of a known drug allergy and that doctor orders the same medicretion to be administered to patient requesting the patient be restrained by ankle/wrist restraints because he Is denying treatment, the nusse ordered to administer the medicretion Is Informed of the allergy prior to the Injection and disregards the patient concerns requesting help from the hospital staff to told the patient still to administer the medication while the patient Is restrained by ankle/wrist restraints on a hospital gurney, and after the patient Informs all the medical personnel that came In contact with him about his allergy this patient still gets Injected with a medicretion that's a known drug allergy, it's hospital and Its employees breach of duty caused plaintiff to fear for his safety (see Green v. Leibowitz, 118 A.D.2d 756).

Under New York law, a cause of action for Nied under the "direct duty theory" arises "If the plaintiff suffers an emotional

P3. 1 of 3

Injury from defendant's breach of a duty which unreasonably endangered his/her own physical safety (see Mortise v. United States, 102 F.3d 693,696 (2d cir.1996) (citing Kennedy v. McKesson Co., 58 N.Y.2d 500). Now IF plaintiff suffered emotional injury from worrying about complications that can arise after a surgery, those complications are a reasonable risk that can endanger their safety because they normally occur after that type of procedure has taken place.

However, a plaintiff that suffers an emotional injury from informing a doctor that a certain medication causes anaphylaxis then that doctor orders ankle/wrist restraints because patient is not consenting to any medication especially the medication he's allergic to, orders for the known drug allergy medication to be administered, the nurse administering the medication disregards patient informing her of an allergy then requesting hospital staff to hold patient still to administer the medication while the patient is being restrained by ankle/wrist restraints on a hospital gurney, and the patient is still injected with a known drug allergy after crying and begging NYCHHC employees not to inject him because of a prior almost fatal allergic reaction; this plaintiff suffered from an emotional injury from defendant's breach of a duty which unreasonably endangered his own physical safety (Mortise v. United States, 102 F.3d 693).

Now the plaintiff understands this duty must be specific to the plaintiff and not some amorphous free-floating duty to society (see Mortise, 102 F.3d at 696 (citing Johnson v. Jamaica Hosp. 62

N.Y.2d 523). However a hospital's duty to not administer a

medication that they were already put notice is a known drug

allergy, is a duty owed to the patient, which it is the hospitals

responsibility to Inquire about a patients known allergies before

providing any treatment or any meals.

Claim #5
against
The city of
New York

Nypd officers

## False arrest

claim
requirements

To state a claim for false arrest under New York Law, a plaintiff must show that (1) the defendant intentionally confined the plaintiff (2) the plaintiff was conscious of the confinement (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified.

M.H.L. §
9.41
standard

M.H.L. §9.41 provides that: "any ... police officer... may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others."

pg. 1 of 4

M.H.L. §9.41 "Likely to result in serious harm" is defined as:

(a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or

(B) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

applicable law  a warrantless seizure for the purpose of involuntary hospitalization

'may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is dangerous to himself/himself, or others (see art.Hary v. city of N.Y., 339 F.3d 129).

| | |
|---|---|
| Reason for Involuntary Hospitalized | Now pursuant to 14NYCRR 590.12 (d)(1), the officer that brought the plaintiff in the ED of Bellevue Hospital was interviewed by MD chaput. Even though MD chaput didn't follow the requirement of this provision, which requires the physician to identify the officer interviewed. However, the interview of the officer states the following: |
| pg. 2 of 4 | Pg. 10 of 37 |
| Substance of Doctor's Interview with Officer | Thu, 26 Dec 2111 Psychiatry attending other note chaput, F Note(wp): Pt is a 23 yo Bm with unknown psychiatric hx BIB EMS after he became disruptive in a chinese restaurant, did not pay for his food and starting breaking things. |
| Evaluation of officer's reason meeting M.H.L 9.41 standards | M.H.L 9.41 is the law concerning the authority given to officers to conduct a warrantless seizure of an emotionally disturbed person that the officer believes is a danger to themselves or others. Now this law is designed to be implemented by officers when deciding whether to involuntary hospital a citizen they believe is a danger to themselves or others. Since this law was |

designed For officers and not medical professionals, the plaintiff (myself) will now determine whether the reason given For the warrantless seizure to the doctor by the officers, met M.H.L. 941 standards.

The officer stated the plaintiff was breaking things and did not pay For his food. The plaintiff did pay For his food and this mysterious thing that was broke was never Identified, so its nothing more than a mere allegation that was used as a pretext to Justify bringing the plaintiff to the hospital For Involuntary hospitalization. Futhermore, the restaurant that the plaintiff is being accused of stealing from had cameras pointed at the register. The video Footage of the Incident from the restaurant will show plaintiff did In Fact pay For his food. However the conduct described that was used as the officer's reason For Involuntary hospitalization is criminal conduct (For example larceny, destruction of property) and doesnt describe any conduct to support the claim that the plaintiff was a danger to himself or others. Since the officer's Interview with MD chreput doesnt contain any allegations that will support the claim that the plaintiff was a danger to himself or others, this warrantless seizure is not Justified under M.H.L § 9.41. Therefore this arrest was not Justified and the plaintiff was Falsely arrested by these officers.

Pg. 3 of 4

| Parties | The city of New York |
|---|---|
| | NYPD officers: |
| | Police officer Jonathon Rivera, Shield 14532 |
| | Police officer Edward Testa, Shield 28538 |
| | Police officer amar Bhairam, Shield 1382 |
| | Police officer Gregory Kasarck (retired) |

Pg. 4 of 4

claim #6
against
The City of
New York
and
NYPD Officers

Malicious abuse of process

Malicious abuse     In New York, a malicious abuse-of-process claim lies against
of process     a defendant who (1) employs regularly issued legal process to
standards     compel performance or forbearance of some act (2) with intent
to do harm without excuse or justification, and (3) In order
to obtain a collateral objective that is outside the legitimate
ends of the process" (Savino v. City of New York, 331 F.3d
63 (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d cir. 1994)).

Facts of the     These officers took the plaintiff into custody for involuntary
Incident     hospitalization pursuant to mental Hygiene Law §9.41. Which the
with Law     legitimate ends of this process is the plaintiff being arrested and
involuntarily hospitalized. The arresting officers then wouldn't comply
with the plaintiff's request or Doctor's request of unhandcuffing the
plaintiff until the Doctor (MD chapout) agreed with the officer's
request to forcibly medicate the plaintiff because he was allegedly
acting up, which the plaintiff wasn't acting up and the officer wanted
the plaintiff to be restrained and sedated because the plaintiff
wouldn't agree to leave a restaurant that had short-changed
the plaintiff after the officer's told him to leave even though
the plaintiff requested these officer's require the restaurant to
run their video footage back to prove he in fact had been stolen
from. However, the officers instead chose to punish defendant
by requesting plaintiff be forcibly sedated in a non-emergency situation
Pg.1 of 3     because plaintiff wouldn't agree to leave restaurant after he reported

a crime he wanted the police to Investigate.

These officers took plaintiff into custody with no probable cause to believe he was a danger to himself or others not complying with M.H.L. 941, even though the plaintiff was taken into custody pursuant to this Law (see Savino v. City of New York, 331 F.3d 63 (citing McMullen v. Michigan Home Furnishing Corp., 132 Misc. 838, 839, 230 N.Y.S. 508, 509-10 (N.Y. City Ct 1928)) (it's noted that "although abuse of process ... does not require that probable cause be lacking ... a lack of probable cause creates an Inference of malice, supporting the collateral objective element" of this claim). Officers assessed plaintiff to punish him by Involuntarily committing him requiring he be forcibly medicated before they turned over custody to the hospital as retribution for plaintiff not leaving restaurant after officers commanded him to (see Board of Educ. of Farmingdale, 38 N.Y. 2d at 404, 380 N.Y. S.2d at 642-43, 343 N.E.2d at 283) ("collateral objective" Includes retribution).

Plaintiff was arrested as punishment for not leaving. Which procedural due process forbids the use of legal process for a wrongful purpose (see Torres v. Superintendent of Police, 893 F.2d 404, 410 (1st cir. 1990) (procedural due process violations Include deprivations "of liberty by a distortion and corruption of the processes of law"), which the officers Intended to do harm by requiring the plaintiff be forcibly medicated In non-emergency situation before they agreed to turn over custody to the

hospital.

Parties                 The city of New York

                        NYPD officers:

                        Police officer Scretten Reuese, Shield 14532

                        Police officer Edward Teeta, Shield 28538

                        Police officer amer Bhairem, Shield 1382

                        Police officer Gregory Hoserch (retired)

Pg. 3 of 3

Municipality Liability

| Federal torts | Under 42 U.S.C. §1983 (1) unreasonable use of restraints (2) force medication (3) False arrest (Nyc HHC) (4) False arrest (Nyc) (5) malicious abuse of Process |
|---|---|
| Nyc HHC Liability | Since Nyc HHC is responsible for all the hospitals that are manage by them and a hospital is a place where many constitutional violations can occur on a daily basis including but not limited to False arrest, unlawful imprisonment, unwanted bodily intrusions, medication administered without consent and noise. These facilities should be under intense supervision by their employers to make sure the correct law and procedures in regards to the medical profession are being followed at all times. If a doctor states a certain behavior was exhibited to justify a certain action taken then the area that the behavior was exhibited in should be under video surveillance. So Nyc HHC can confirm the doctor's decision was made using professional judgement and not made because of an ulterior motive. a decision that can potentially violate a citizen rights, should be substantiated by a written report documenting the behavior that influenced that decision and audio/video of that behavior. Any standard requiring less to justify a decision involving a citizen's constitutional rights shows Nyc HHC is showing a deliberate indifference to the rights of the citizens in their care. To the degree where a lesser standard will allow constitutional violations to be so widespread throughout these facilities that it will be accepted and have the force of law, a doctor being able to document equivocal and unsubstantiated |

findings and these findings being sufficient enough to justify their actions without requiring audio/video to corroborate what was seen and heard is preposterous. Because a Doctor can just document a patient exhibited behavior the patient didn't exhibit and also tailor the findings to justify their actions that violated the citizen's constitutional rights. All areas where examinations are conducted or areas where a patient is being escorted by staff throughout a hospital should be under video surveillance and all interviews/examinations should be recorded. To prevent Doctors or nurses from falsifying what behavior was exhibited by a patient or what statement were uttered by a patient.

| The city of New York | The NYPD is one of the city of new york agencies. This city has a long history of officers using unnecessary deadly force, Falsifying criminal and felony complaints to justify arrest, and exhibiting other corrupt behavior. The city of new york, however, is not the only city or police force in the nation plagued by this illness. Which is why cities nationwide have implemented the use of body cams for officers on duty actively enforcing the law. Officers in cities across the country have falsely reported a citizen made a furtive or suspicious movement to justify using deadly force. However, once a innocent bystander video footage of incident goes viral then these officers unlawful actions makes news channel nationwide causing public uproar. Other officers have under-reported amounts of currency seized from drug raids. Then |

when this Information comes to light from other officers caught up in unrelated Illegal activities, It becomes a full blown IA Investigation. Citizens have been force to stand trial on Frivolous charges, only to find out on the day of trial, that the officers Involved lied on police reports and Fabricated evidence. These and a list of other deceitful tactics have been used to make arrest and obtain convictions all across the country. Another example Is officers being they received a cell In the area to unlawfully stop, detain, and search citizens at will without reasonable suspicion.

The city of New York Knows of Its officers using these tactics to make arrest and cities nationwide have Implemented the use of body cams to prevent this nationwide practice. an officer cant lie about what took place when Its video footage of the Incident. The city of New York has even Implemented the use of body cams In select precincts across the city. However by not requiring all officers In the city to be required to wear these devices, the city of New York allows this unlawful practice to continue, which shows the city's deliberate Indifference to Its Inhabitant's constitutional rights being violated. If these officers on the day of the Incident had been wearing a body cam then the officer who was Interviewed by MD cheqit couldnt Falsify what occurred In the restaurant. However, since there was no body cam, this officer Falsified the whole Incident.

Municipality Liability

State Law | (1) N:ed claim against NYCHHC

Tort claim

Liability

The doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of his/her employment. Pursuant to this doctrine, the employer may be liable when the employee acts negligently or Intentionally, so long as the tortious conduct is generally forseeable and a natural Incident of the employment" (Judith M. v. Sisters of charity Hosp., 93 NY2d 932, 933 [1999]; See also Riviello v. Waldron, 47 NY2d 297, 304 [1979; Melbourne v. New York Life Ins., 271 AD2d 296, 298 [2000]).

Incident a Doctor ordering medication to be administered to a patient is acting within the scope of their employment. Even if they negligently order a medication that is a known drug allergy to be administered to that patient.

Pg. 4 of 4

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

I sustained constitutional and Emotional injuries.

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

Im suing for $10,000,000 (10 million dollars) In compensatory damages against municipalities. Im suing for $5,000,000 (5 million dollers) In compensatory and $5,000,000 (5 million dollers) In punitive damages against each Individual defendant. Im also suing for Injunctive Relief against the city of New York requesting all officers employed wear body cams. Futhermore, Im also suing for Injunctive relief against NYCHHC requesting Doctor/nurses record audio and video when conducting all mental examinations.

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

**Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.**

| | | |
|---|---|---|
| 2/26/17 | | Robert Lurch |
| **Dated** | | **Plaintiff's Signature** |
| Robert | D | Lurch |
| **First Name** | **Middle Initial** | **Last Name** |
| Franklin Correctional Facility | | 62 Bare Hill rd., P.O. Box 10 |
| **Prison Address** | | |
| Franklin / Malone | NY | 12953 |
| **County, City** | **State** | **Zip Code** |

Date on which I am delivering this complaint to prison authorities for mailing: 2/26/17

FRANKLIN CORRECTIONAL FACILITY
P.O. BOX 10, 62 BARE HILL ROAD
MALONE, NEW YORK 12953

Robert Lurch DIN 16A2468

RECEIVED
SDNY DOCKET UNIT

2017 MAR -3 PM 3: 26



USM
SDNY P3

Pro Se Intake Unit
United States District Court
Southern District of New York
500 Pearl St.
New York, NY
10007

FRANKLIN
CORRECTIONAL FACILITY

neopost
03/01/2017
US POSTAGE